Gregory D. Miller
Timothy P. Gonzalez
Catherine Salerno
**RIVKIN RADLER LLP**
25 Main Street
Court Plaza North, Suite 501
Hackensack, NJ 07601-7082
Phone: (201) 287-2460
Facsimile: (201) 489-0495
Gregory.miller@rivkin.com
Timothy.Gonzalez@rivkin.com
Catherine.Salerno@rivkin.com

Of Counsel:
Shannon M. Bloodworth (to be admitted *pro hac vice*)
**PERKINS COIE LLP**
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Phone: (202) 654-6200
SBloodworth@perkinscoie.com

Autumn N. Nero (to be admitted *pro hac vice*)
**PERKINS COIE LLP**
33 E. Main Street, Suite 201
Madison, WI 53703
Phone: (608) 663-7460
ANero@perkinscoie.com

Bryan D. Beel (to be admitted *pro hac vice*)
**PERKINS COIE LLP**
1120 NW Couch Street
Tenth Floor
Portland, OR 97209
Phone: (503) 727-2000
BBeel@perkinscoie.com

*Attorneys for Plaintiff Oyster Point Pharma, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| OYSTER POINT PHARMA, INC., | |
| Plaintiff, | |
| v. | Civil Action No. |
| LUPIN LTD., | |
| Defendant. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Oyster Point Pharma, Inc. ("Oyster Point"), by its undersigned attorneys, brings this

Complaint against Defendant Lupin Ltd. ("Lupin"), and hereby alleges as follows:

## NATURE OF THE ACTION

1.     This is a civil action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, § 100 *et seq*., including 35 U.S.C. § 271(e)(2); 21 U.S.C. § 355(j) (the "Hatch-Waxman Act"); and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, which arises from Lupin's submission of Abbreviated New Drug Application ("ANDA") No. 220392 with the United States Food and Drug Administration ("FDA") seeking approval to market a generic version of Oyster Point's TYRVAYA® (varenicline solution) prior to the expiration of U.S. Patent Nos. 9,504,644 ("the '644 patent"); 9,504,645 ("the '645 patent"); 9,532,944 ("the '944 patent"); 9,597,284 ("the '284 patent"); 10,456,396 ("the '396 patent"); 11,224,598 ("the '598 patent"); 11,903,941 ("the '941 patent"); 11,903,943 ("the '943 patent"); and 11,911,380 ("the '380 patent"), collectively herein referred to as the "Patents-in-Suit." Plaintiff attaches hereto a true and accurate copy of each of the Patents-in-Suit as Exhibits A-I.

## PARTIES

### Plaintiff

2.     Plaintiff Oyster Point is a corporation organized and existing under the laws of Delaware with its principal place of business at 3711 Collins Ferry Road, Morgantown, WV 26505.

3.     Oyster Point is a biopharmaceutical company focused on the discovery, development, and commercialization of first-in-class therapies to treat ophthalmic diseases.

### Defendant

4.     On information and belief, Lupin Ltd. is a foreign corporation organized and existing under the laws of India, having its principal place of business at Kalpataru Inspire, 3rd Floor, Off. Western Express Highway, Santacruz (East), Mumbai 400 055, India.

5.     On information and belief, Lupin, by itself and through its subsidiaries, affiliates, and agents, manufactures, uses, promotes, markets, sells, offers to sell, distributes, and/or imports generic

versions of branded pharmaceutical products for marketing throughout the United States, including in this District.

## JURISDICTION AND VENUE

6.      Oyster Point incorporates by reference the prior paragraphs of this Complaint as if fully set forth herein.

7.      This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 100 *et seq*., including § 271(e)(2), 271(a), 271(b), and 271(c).

8.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a). The Court also has jurisdiction to adjudicate this action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. An actual, substantial, and justiciable controversy exists between Oyster Point and Lupin of sufficient immediacy and reality to warrant the issuance of a declaratory judgment regarding the parties' adverse legal interests with respect to the Patents-in-Suit.

9.      This Court has personal jurisdiction over Lupin by virtue of, *inter alia*, its systematic and continuous contacts with this jurisdiction, as alleged herein.

10.      On information and belief, either directly or through its subsidiaries, agents, and/or affiliates, Lupin regularly and continuously transacts business within this District, including by manufacturing, selling, offering for sale, marketing, distributing, and/or importing generic versions of pharmaceutical products in the United States, including New Jersey. This includes contacts with and in this District through offices and facilities located at 100 Somerset Corporate Blvd., Bridgewater, New Jersey, and 400 Campus Dr., Somerset, New Jersey.

11.      On information and belief, Lupin makes pharmaceutical products for sale in New Jersey, and currently markets, distributes, and sells either directly or through its subsidiaries, agents, and/or affiliates, pharmaceutical products throughout the United States, including in this District. On

information and belief, Lupin derives substantial revenue from the sale of those products in New Jersey and has availed itself of the privilege of conducting business within New Jersey.

12.    This Court also has personal jurisdiction because Lupin filed ANDA No. 220392 ("Lupin's ANDA"), seeking approval from the FDA to market and sell a generic version of Oyster Point's TYRVAYA® 0.03 mg per spray ("Lupin's ANDA Product") throughout the United States, including in New Jersey.

13.    On information and belief, Lupin intends to commercially manufacture, use, and sell Lupin's ANDA Product upon receiving FDA approval. On information and belief, if and when the FDA approves Lupin's ANDA, Lupin's ANDA Product would, among other things, be marketed, distributed, and sold in New Jersey, and/or prescribed by physicians practicing within this District, and/or dispensed by pharmacies located within this District, all of which would have a substantial effect on New Jersey. By filing its ANDA, Lupin has made clear that it intends to use its distribution channels to direct sales of Lupin's ANDA Product into New Jersey.

14.    This Court has personal jurisdiction over Lupin because Lupin has previously been sued in this district and has not challenged personal jurisdiction, and Lupin has affirmatively availed itself of this Court's jurisdiction by filing counterclaims in this district. *See*, *e.g.*, *Braintree Laboratories, Inc. v. Lupin Limited*, No. 25-cv-13133 (D.N.J.); *Takeda Pharmaceuticals U.S.A., Inc. v. Lupin, Ltd.*, No. 25-cv-12574 (D.N.J.); *Bausch & Lomb, Inc. v. Lupin Ltd.*, No. 23-cv-2452 (D.N.J.); *Jazz Pharmaceuticals Research UK Limited v. Apotex Inc.*, No. 23-cv-23141 (D.N.J.); *Novo Nordisk Inc. v. Lupin Ltd.*, No. 23-cv-4027 (D.N.J.); *Bausch & Lomb, Inc. v. Lupin Ltd.*, No. 22-cv-534 (D.N.J.); *Teva Branded Pharmaceutical Products R&D, Inc. v. Lupin Limited*, No. 21-cv-13247 (D.N.J.). Upon information and belief, Lupin has also availed itself of the legal protections of the State of New Jersey by having filed suit in this jurisdiction. *See*, *e.g.*, *Lupin Ltd. v. Merck, Sharp & Dohme Corp.*, No. 10-cv-00683 (D.N.J.).

15.     Alternatively, this Court may exercise personal jurisdiction over Lupin pursuant to Federal Rule of Civil Procedure 4(k)(2) because Oyster Point's claims arise under federal law; Lupin is a foreign company not subject to general personal jurisdiction in the courts of any state; and Lupin has sufficient contacts with the United States as a whole, including but not limited to preparing and submitting an ANDA to the FDA, and/or marketing and/or selling generic pharmaceutical products that are distributed and sold throughout the United States, such that this Court's exercise of jurisdiction over Lupin satisfies due process.

16.     Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400(b) because Lupin is a foreign corporation organized and existing under the laws of India and may be sued in any judicial district in the United States in which it is subject to the court's personal jurisdiction, including in this District.

## **PATENTS-IN-SUIT**

17.     On November 29, 2016, the U.S. Patent and Trademark Office duly and legally issued the '644 patent, titled "Methods of Increasing Tear Production." Attached as Exhibit A is a true and correct copy of the '644 patent. The claims of the '644 patent are valid, enforceable, and not expired. Oyster Point is the owner and assignee of the '644 patent and has the right to enforce the '644 patent.

18.     On November 29, 2016, the U.S. Patent and Trademark Office duly and legally issued the '645 patent, titled "Pharmaceutical Formulations for Treating Ocular Conditions." Attached as Exhibit B is a true and correct copy of the '645 patent. The claims of the '645 patent are valid, enforceable, and not expired. Oyster Point is the owner and assignee of the '645 patent and has the right to enforce the '645 patent.

19.     On January 3, 2017, the U.S. Patent and Trademark Office duly and legally issued the '944 patent, titled "Methods of Improving Ocular Discomfort." Attached as Exhibit C is a true and

correct copy of the '944 patent. The claims of the '944 patent are valid, enforceable, and not expired. Oyster Point is the owner and assignee of the '944 patent and has the right to enforce the '944 patent.

20.     On March 21, 2017, the U.S. Patent and Trademark Office duly and legally issued the '284 patent, titled "Dry Eye Treatments." Attached as Exhibit D is a true and correct copy of the '284 patent. The claims of the '284 patent are valid, enforceable, and not expired. Oyster Point is the owner and assignee of the '284 patent and has the right to enforce the '284 patent.

21.     On October 29, 2019, the U.S. Patent and Trademark Office duly and legally issued the '396 patent, titled "Dry Eye Treatments." Attached as Exhibit E is a true and correct copy of the '396 patent. The claims of the '396 patent are valid, enforceable, and not expired. Oyster Point is the owner and assignee of the '396 patent and has the right to enforce the '396 patent.

22.     On January 18, 2022, the U.S. Patent and Trademark Office duly and legally issued the '598 patent, titled "Methods of Increasing Lacrimal Proteins." Attached as Exhibit F is a true and correct copy of the '598 patent. The claims of the '598 patent are valid, enforceable, and not expired. Oyster Point is the owner and assignee of the '598 patent and has the right to enforce the '598 patent.

23.     On February 20, 2024, the U.S. Patent and Trademark Office duly and legally issued the '941 patent, titled "Compositions and Use of Varenicline for Treating Dry Eye." Attached as Exhibit G is a true and correct copy of the '941 patent. The claims of the '941 patent are valid, enforceable, and not expired. Oyster Point is the owner and assignee of the '941 patent and has the right to enforce the '941 patent.

24.     On February 20, 2024, the U.S. Patent and Trademark Office duly and legally issued the '943 patent, titled "Compositions and Use of Varenicline for Treating Dry Eye." Attached as Exhibit H is a true and correct copy of the '943 patent. The claims of the '943 patent are valid, enforceable, and not expired. Oyster Point is the owner and assignee of the '943 patent and has the right to enforce the '943 patent.

25.    On February 27, 2024, the U.S. Patent and Trademark Office duly and legally issued the '380 patent, titled "Compositions and Use of Varenicline for Treating Dry Eye." Attached as Exhibit I is a true and correct copy of the '380 patent. The claims of the '380 patent are valid, enforceable, and not expired. Oyster Point is the owner and assignee of the '380 patent and has the right to enforce the '380 patent.

26.    Each of the Patents-in-Suit is listed in FDA's *Approved Drug Products with Therapeutic Equivalence Evaluations*, commonly referred to as the Orange Book, for TYRVAYA®.

### TYRVAYA®

27.    Oyster Point holds approved New Drug Application ("NDA") No. 213978 for 0.03 mg per spray of varenicline solution for the treatment of the signs and symptoms of dry eye disease, as further described in the TYRVAYA® label, attached as Exhibit J.

28.    Oyster Point markets the nasal spray approved under NDA No. 213978 in the United States under the registered trademark TYRVAYA®. FDA's Orange Book identifies the Patents-in-Suit for TYRVAYA®.

29.    At least one claim of each of the Patents-in-Suit (all of which are listed in the Orange Book) covers TYRVAYA®, or approved methods of using TYRVAYA®.

30.    Oyster Point's principal place of business is 3711 Collins Ferry Road, Morgantown, WV 26505. Consistent with this, on May 7, 2025, Oyster Point updated the FDA regarding Oyster Point's FDA correspondence address as 3711 Collins Ferry Road, Morgantown, WV 26505 ("Oyster Point's Address"). FDA acknowledged receipt of Oyster Point's Address on May 8, 2025.

31.    On information and belief, Oyster Point's Address is the same address available to the public from the Orange Book Staff at the Center for Drug Evaluation and Research, Food and Drug Administration, which provides ANDA filers with the names and addresses of NDA holders upon request. *See* 21 CFR 314.95(a)(2) ("The name and address of the NDA holder or its attorney, agent,

or authorized official may be obtained by sending a written or electronic communication to the Central Document Room, Attn: Orange Book Staff, Center for Drug Evaluation and Research, Food and Drug Administration, 5901-B Ammendale Rd., Beltsville, MD 20705-1266 or to the Orange Book Staff at the email address listed on the Agency's Web site at http://www.fda.gov.").

### LUPIN'S ACTS GIVING RISE TO THIS ACTION

32.    On information and belief, Lupin prepared and filed Lupin's ANDA, seeking approval to manufacture, import, market, use, offer for sale, and/or sell Lupin's ANDA Product in the United States, including in this District, if the FDA approves Lupin's ANDA.

33.    On information and belief, Lupin submitted to the FDA Lupin's ANDA under 21 U.S.C. § 355(j) of the Federal Food, Drug, and Cosmetic Act ("FFDCA"), to obtain FDA approval to engage in the commercial manufacture, use, offer to sell, or sale within the United States or importation in the United States of Lupin's ANDA Product before the expiration of the Patents-in-Suit.

34.    Lupin has received FDA approval for other varenicline-based products in the United States. *See* https://www.lupin.com/US/media/lupin-launches-varenicline-tablets-in-the-united-states.

35.    On information and belief, the FDA has not yet approved Lupin's ANDA.

36.    By email dated November 12, 2025, Oyster Point received an attached letter, which on its face was dated May 29, 2025 ("Lupin's Notice Letter"). On its face, Lupin's Notice Letter purports to notify Oyster Point that Lupin had submitted Lupin's ANDA with certifications pursuant to Section 505(j)(2)(A)(vii)(IV) of the Federal Food, Drug, and Cosmetic Act ("Paragraph IV Certifications") to, *inter alia*, the Patents-in-Suit, seeking FDA approval to engage in the commercial manufacture, use, sale, offer for sale, and/or importation of Lupin's ANDA Product in or into the United States, including in this District, prior to the expiration of the Patents-in-Suit.

37.     On information and belief, based on the face of Lupin's Notice Letter, Lupin purported to send Lupin's Notice Letter to, *inter alia*, Oyster Point, as a notice pursuant to 21 U.S.C. § 355(j)(2)(B). However, on its face, Lupin's Notice Letter was not addressed to Oyster Point at Oyster Point's Address. Nor was Lupin's Notice Letter addressed to a "representative designated to receive such notice" with respect to Oyster Point's NDA under 21 U.S.C. § 355(b)(3)(C)(ii).

38.     Lupin was required under 21 U.S.C. §§ 355(j)(2)(B)(ii) & (iii) to notify Oyster Point— as the NDA holder for Tyrvaya®—within 20 days of the date of the FDA's confirmation of the filing of Lupin's Paragraph IV Certifications. Under 21 C.F.R. § 314.95(j), the 45-day window during which the filing of a patent infringement suit triggers a 30-month stay of Lupin's ANDA approval does not begin until "the day following the date of receipt of the notice by the patent owner or its representative and by the approved NDA holder…." On information and belief, Lupin did not provide the required notice of Lupin's Paragraph IV Certifications and Lupin's ANDA to NDA holder Oyster Point at Oyster Point's address via a designated delivery service (as required). *See* 21 C.F.R. § 314.95(a) & (b),

39.     On information and belief, Lupin has incorrectly informed the FDA that it has provided the required notice of Lupin's Paragraph IV Notices to Oyster Point. *See* Under 21 C.F.R. § 314.95(e) (requiring an ANDA filer to notify FDA of Paragraph IV notices).

40.     Oyster Point has filed this action before the expiration of forty-five days from the date of receipt of Lupin's Notice Letter to NDA holder Oyster Point (which notice has not yet been effectuated); a thirty-month stay of FDA approval of Lupin's ANDA has been triggered pursuant to 21 U.S.C. § 355(j)(5)(B)(iii).

41.     In Lupin's Notice Letter, Lupin acknowledged that the Reference Listed Drug ("RLD") for Lupin's ANDA is TYRVAYA® and stated that Lupin's ANDA Product contains varenicline as its active ingredient.

42.     In Lupin's Notice Letter, Lupin also acknowledged that it represented to the FDA that its ANDA Product has the same active ingredient as TYRVAYA®; has the same dosage form and strength as TYRVAYA®; and is bioequivalent to TYRVAYA®.

43.     On information and belief, Lupin is aware of the Patents-in-Suit, and aware that at least certain claims of these patents cover TYRVAYA®, or approved methods of using TYRVAYA®.

44.     On information and belief, Lupin is seeking approval to market its ANDA Product for the same approved indication as TYRVAYA®.

45.     On information and belief, the proposed label for Lupin's ANDA Product ("Lupin's Proposed Label") will refer to the product as, *inter alia*, a treatment for the signs and symptoms of dry eye disease and will indicate the strength of the ANDA Product as 0.03 mg/spray.

46.     On information and belief, Lupin's Proposed Label will instruct patients, physicians, and/or healthcare providers to administer Lupin's ANDA Product for, *inter alia*, the treatment of the signs and symptoms of dry eye disease.

47.     On information and belief, Lupin's Proposed Label will contain data relating to the treatment of patients with dry eye disease, obtained from clinical studies involving, *inter alia*, TYRVAYA®.

48.     On information and belief, Lupin, through its own actions and through the actions of its agents, affiliates, and subsidiaries, prepared and submitted Lupin's ANDA to the FDA, and intends to further seek approval for the product described in Lupin's ANDA.

49.     On information and belief, if the FDA approves Lupin's ANDA, Lupin will make, use, distribute, promote, market, offer for sale, or sell Lupin's ANDA Product throughout the United States, or will import Lupin's ANDA Product into the United States. On information and belief, if the FDA approves Lupin's ANDA, Lupin, through its own actions and through the actions of its agents,

affiliates, and subsidiaries, will actively induce or contribute to the manufacture, use, offer for sale, sale, or importation of Lupin's ANDA Product in or into the United States.

50.     On information and belief, Lupin, in concert with its agents, affiliates, and subsidiaries, filed Lupin's ANDA without adequate justification for asserting that the Patents-in-Suit are invalid, unenforceable, and/or not infringed by the commercial manufacture, use, offer for sale, sale, or importation in or into the United States of Lupin's ANDA Product.

51.     On information and belief, Lupin has acted with full knowledge of the Patents-in-Suit and without a reasonable basis for believing that it would not be liable for direct infringement of these patents; active inducement of infringement by others of the Patents-in-Suit; and/or contribution to the infringement by others of the Patents-in-Suit.

## COUNT I: INFRINGEMENT OF THE '644 PATENT UNDER 35 U.S.C. § 271(e)(2)

52.     Oyster Point incorporates by reference the prior paragraphs of this Complaint as if fully set forth herein.

53.     On information and belief, Lupin's ANDA Product, and the use of Lupin's ANDA Product, are covered by one or more claims of the '644 patent.

54.     On information and belief, Lupin submitted or caused submission of Lupin's ANDA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation in or into the United States of Lupin's ANDA Product prior to the expiration of the '644 patent.

55.     Lupin's submission of Lupin's ANDA containing a Paragraph IV Certification to obtain approval from the FDA to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Lupin's ANDA Product prior to the expiration of the '644 patent is an act of infringement of at least one of the claims of the '644 patent under 35 U.S.C. § 271(e)(2)(A).

56.     The commercial manufacture, importation, use, sale, or offer for sale of Lupin's ANDA Product is in violation of Oyster Point's patent rights and will cause harm to Oyster Point for which damages are inadequate.

57.     As evidenced by Lupin's Notice Letter, which recites that Lupin's ANDA "contains a Paragraph IV certification to obtain approval to engage in the commercial manufacture, use, or sale of the ANDA Product before the expiration of the Orange Book patents," which includes the '644 patent, Lupin knew of the '644 patent before filing Lupin's ANDA.

58.     On information and belief, Lupin's infringement of the '644 patent was, is, and would be willful. Lupin's conduct renders this case "exceptional" under 35 U.S.C. § 285.

59.     Unless and until Lupin is enjoined from directly infringing the '644 patent, actively inducing infringement of the '644 patent, and contributing to the infringement of the '644 patent, Oyster Point will suffer irreparable injury. Oyster Point has no adequate remedy at law and, considering the balance of hardships between Oyster Point and Lupin, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of an injunction.

## COUNT II: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '644 PATENT UNDER 35 U.S.C. § 271(b)-(c)

60.     Oyster Point incorporates by reference the prior paragraphs of this Complaint as if fully set forth herein.

61.     This claim arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

62.     There is an actual case or controversy such that the Court may entertain Oyster Point's request for declaratory relief consistent with Article III of the United States Constitution, and that actual case or controversy requires a declaration of rights by this Court.

63.     The use of Lupin's ANDA Product, including according to Lupin's Proposed Label, is covered by one or more claims of the '644 patent.

64.     As evidenced at least by Lupin's Notice Letter, which confirms that Lupin's ANDA contains Paragraph IV certifications to the Orange Book patents, which includes the '644 patent, Lupin had actual knowledge, before filing Lupin's ANDA, of both the '644 patent and that Lupin's Proposed Label instructs infringement of the '644 patent.

65.     On information and belief, Lupin submitted or caused submission of Lupin's ANDA to obtain FDA approval of Lupin's ANDA Product and intends to manufacture, use, offer for sale, sell, and/or import Lupin's ANDA Product in the United States.

66.     On information and belief, upon FDA approval of Lupin's ANDA, Lupin will immediately or imminently market or cause to be marketed Lupin's ANDA Product with Lupin Proposed Label in the United States, including the offer for sale, sale, marketing, distribution, and/or importation of Lupin's ANDA Product, and therefore actively induce and/or contribute to infringement by others of one or more claims of the '644 patent, either literally or under the doctrine of equivalents, under 35 U.S.C. § 271(b) and/or (c), unless enjoined by the Court.

67.     On information and belief, notwithstanding Lupin's knowledge of the claims of the '644 patent, Lupin has continued to assert its intent to manufacture, use, offer for sale, sell, distribute, and/or import Lupin's ANDA Product with its product labeling in or into the United States following FDA approval of Lupin's ANDA prior to the expiration of the '644 patent.

68.     On information and belief, Lupin has made, and will continue to make, substantial preparation in the United States to manufacture, use, sell, offer to sell, and/or import Lupin's ANDA Product upon approval by the FDA.

69.     On information and belief, upon FDA approval of Lupin's ANDA, Lupin will, through its own actions or through the actions of its agents, affiliates, and subsidiaries, market and/or distribute Lupin's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, patients, and/or other end users.

70.     On information and belief, Lupin will knowingly and intentionally include with Lupin's ANDA Product Lupin's Proposed Label, which will include directions and instructions that instruct patients, physicians, and/or healthcare providers to use or administer Lupin's ANDA Product in accordance with the methods claimed in the '644 patent.

71.     On information and belief, physicians, patients, and/or healthcare providers will administer Lupin's ANDA Product in the United States according to the directions and instructions in Lupin's Proposed Label, and such administration will constitute direct infringement of at least one claim of the '644 patent.

72.     On information and belief, at least through Lupin's Proposed Label, Lupin will encourage physicians, healthcare professionals, resellers, pharmacies, hospitals, clinics, patients, and/or other end users of Lupin's ANDA Product to directly infringe the '644 patent, and Lupin will know or should know that such conduct will occur.

73.     On information and belief, Lupin will actively induce, encourage, aid, and abet that conduct by physicians, healthcare professionals, resellers, pharmacies, hospitals, clinics, patients, and/or other end users with knowledge and specific intent that the conduct infringes the '644 patent.

74.     Through at least the foregoing actions, Lupin will actively induce the infringement of at least one claim of the '644 patent.

75.     On information and belief, Lupin plans and intends to, and will, actively induce infringement of the '644 patent when Lupin's ANDA is approved, and plans and intends to, and will, do so immediately and imminently upon FDA approval. Lupin's activities will be done with knowledge of the '644 patent and specific intent to infringe that patent.

76.     On information and belief, Lupin knows or should know that Lupin's ANDA Product and Lupin's Proposed Label will be especially made or adapted for use in infringing the '644 patent, that Lupin's ANDA Product and Lupin's Proposed Label is not a staple article or commodity of

14

commerce, and that Lupin's ANDA Product and Lupin's Proposed Label are not suitable for substantial non-infringing use.

77.    The commercial manufacture, use, sale, offer for sale, or importation of Lupin's ANDA Product and Lupin's Proposed Label in or into the United States will contribute to the infringement of one or more claims of the '644 patent.

78.    On information and belief, Lupin knows or should know that its offer for sale, sale, and/or importation of Lupin's ANDA Product and Lupin's Proposed Label will contribute to direct infringement of the '644 patent, and that use of Lupin's ANDA Product according to Lupin's Proposed Label by others constitutes direct infringement of the '644 patent.

79.    Oyster Point is entitled to a declaratory judgment that future manufacture, use, offer for sale, sale, and/or importation of Lupin's ANDA Product and Lupin's Proposed Label by Lupin prior to the expiration of the '644 patent will induce and/or contribute to direct infringement of the '644 patent.

80.    The commercial manufacture, importation, use, sale, or offer for sale of Lupin's ANDA Product and Lupin's Proposed Label is in violation of Oyster Point's patent rights and will cause harm to Oyster Point for which damages are inadequate.

81.    On information and belief, Lupin's infringement of the '644 patent was, is, and would be willful. Lupin's conduct renders this case "exceptional" under 35 U.S.C. § 285.

82.    Unless and until Lupin is enjoined from actively inducing infringement of the '644 patent and contributing to the infringement of the '644 patent, Oyster Point will suffer irreparable injury. Oyster Point has no adequate remedy at law and, considering the balance of hardships between Oyster Point and Lupin, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of an injunction.

## COUNT III: INFRINGEMENT OF THE '645 PATENT UNDER 35 U.S.C. § 271(e)(2)

83.     Oyster Point incorporates by reference the prior paragraphs of this Complaint as if fully set forth herein.

84.     On information and belief, Lupin's ANDA Product, and the use of Lupin's ANDA Product, are covered by one or more claims of the '645 patent.

85.     On information and belief, Lupin submitted or caused submission of Lupin's ANDA to obtain FDA approval of Lupin's ANDA Product prior to the expiration of the '645 patent.

86.     Lupin's submission of Lupin's ANDA containing a Paragraph IV Certification to obtain approval from the FDA to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Lupin's ANDA Product prior to the expiration of the '645 patent is an act of infringement of at least one of the claims of the '645 patent under 35 U.S.C. § 271(e)(2)(A).

87.     The commercial manufacture, importation, use, sale, or offer for sale of Lupin's ANDA Product is in violation of Oyster Point's patent rights and will cause harm to Oyster Point for which damages are inadequate.

88.     As evidenced by Lupin's Notice Letter, which recites that Lupin's ANDA "contains a Paragraph IV certification to obtain approval to engage in the commercial manufacture, use, or sale of the ANDA Product before the expiration of the Orange Book patents," which includes the '645 patent, Lupin knew of the '645 patent before filing Lupin's ANDA.

89.     On information and belief, Lupin's infringement of the '645 patent was, is, and would be willful. Lupin's conduct renders this case "exceptional" under 35 U.S.C. § 285.

90.     Unless and until Lupin is enjoined from directly infringing the '645 patent, actively inducing infringement of the '645 patent, and contributing to the infringement of the '645 patent, Oyster Point will suffer irreparable injury. Oyster Point has no adequate remedy at law and,

16

considering the balance of hardships between Oyster Point and Lupin, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of an injunction.

## COUNT IV: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '645 PATENT UNDER 35 U.S.C. § 271(a)-(c)

91.    Oyster Point incorporates by reference the prior paragraphs of this Complaint as if fully set forth herein.

92.    This claim arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

93.    There is an actual case or controversy such that the Court may entertain Oyster Point's request for declaratory relief consistent with Article III of the United States Constitution, and that actual case or controversy requires a declaration of rights by this Court.

94.    Lupin's ANDA Product is covered by one or more claims of the '645 patent.

95.    As evidenced at least by Lupin's Notice Letter, which confirms that Lupin's ANDA contains Paragraph IV certifications to the Orange Book patents, which includes the '645 patent, Lupin had actual knowledge, before filing Lupin's ANDA, of both the '645 patent and that Lupin's Proposed Label instructs infringement of the '645 patent.

96.    On information and belief, Lupin submitted or caused submission of Lupin's ANDA to obtain FDA approval of Lupin's ANDA Product and intends to manufacture, use, offer for sale, sell, and/or import Lupin's ANDA Product in the United States.

97.    On information and belief, upon FDA approval of Lupin's ANDA, Lupin will immediately or imminently market or cause to be marketed Lupin's ANDA Product with Lupin's Proposed Label in the United States, including the making, using, offering for sale, sale, marketing, distribution, and/or importation of Lupin's ANDA Product, and therefore directly infringe, actively induce and/or contribute to infringement by others of one or more claims of the '645 patent, either literally or under the doctrine of equivalents, under 35 U.S.C. § 271(a), 271(b), and/or (c), unless enjoined by the Court.

98.     On information and belief, notwithstanding Lupin's knowledge of the claims of the '645 patent, Lupin has continued to assert its intent to manufacture, use, offer for sale, sell, distribute, and/or import Lupin's ANDA Product with its product labeling in or into the United States following FDA approval of Lupin's ANDA prior to the expiration of the '645 patent.

99.     On information and belief, Lupin has made, and will continue to make, substantial preparations in the United States to manufacture, use, sell, offer to sell, and/or import Lupin's ANDA Product upon approval by the FDA.

100.    On information and belief, upon FDA approval of Lupin's ANDA, Lupin will, through its own actions or through the actions of its agents, affiliates, and subsidiaries, market and/or distribute Lupin's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, patients, and/or other end users.

101.    On information and belief, Lupin will knowingly and intentionally include with Lupin's ANDA Product Lupin's Proposed Label, which will include directions and instructions that instruct patients, physicians, and/or healthcare providers to use or administer Lupin's ANDA Product.

102.    On information and belief, physicians, patients, and/or healthcare providers will administer Lupin's ANDA Product in the United States according to the directions and instructions in Lupin's Proposed Label, and such administration will constitute direct infringement of at least one claim of the '645 patent.

103.    On information and belief, at least through Lupin's Proposed Label, Lupin will encourage physicians, healthcare professionals, resellers, pharmacies, hospitals, clinics, patients, and/or other end users of Lupin's ANDA Product to directly infringe the '645 patent, and Lupin will know or should know that such conduct will occur.

104. On information and belief, Lupin will actively induce, encourage, aid, and abet that conduct by physicians, healthcare professionals, resellers, pharmacies, hospitals, clinics, patients, and/or other end users with knowledge and specific intent that the conduct infringes the '645 patent.

105. Through at least the foregoing actions, Lupin will actively induce the infringement of at least one claim of the '645 patent.

106. On information and belief, Lupin plans and intends to, and will, actively induce infringement of the '645 patent when Lupin's ANDA is approved, and plans and intends to, and will, do so immediately and imminently upon FDA approval. Lupin's activities will be done with knowledge of the '645 patent and specific intent to infringe that patent.

107. On information and belief, Lupin knows or should know that Lupin's ANDA Product and Lupin's Proposed Label will be especially made or adapted for use in infringing the '645 patent, that Lupin's ANDA Product and Lupin's Proposed Label is not a staple article or commodity of commerce, and that Lupin's ANDA Product and Lupin's Proposed Label are not suitable for substantial non-infringing use.

108. The commercial manufacture, use, sale, offer for sale, or importation of Lupin's ANDA Product and Lupin's Proposed Label in or into the United States will contribute to the infringement of one or more claims of the '645 patent.

109. On information and belief, Lupin knows or should know that its offer for sale, sale, and/or importation of Lupin's ANDA Product and Lupin's Proposed Label will contribute to direct infringement of the '645 patent, and that use of Lupin's ANDA Product according to Lupin's Proposed Label by others constitutes direct infringement of the '645 patent.

110. Oyster Point is entitled to a declaratory judgment that future manufacture, use, offer for sale, sale, and/or importation of Lupin's ANDA Product and Lupin's Proposed Label by Lupin

prior to the expiration of the '645 patent will directly infringe, induce, and/or contribute to direct infringement of the '645 patent.

111.    The commercial manufacture, importation, use, sale, or offer for sale of Lupin's ANDA Product and Lupin's Proposed Label is in violation of Oyster Point's patent rights and will cause harm to Oyster Point for which damages are inadequate.

112.    On information and belief, Lupin's infringement of the '645 patent was, is, and would be willful. Lupin's conduct renders this case "exceptional" under 35 U.S.C. § 285.

113.    Unless and until Lupin is enjoined from directly infringing, actively inducing infringement of the '645 patent, and contributing to the infringement of the '645 patent, Oyster Point will suffer irreparable injury. Oyster Point has no adequate remedy at law and, considering the balance of hardships between Oyster Point and Lupin, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of an injunction.

## COUNT V: INFRINGEMENT OF THE '944 PATENT UNDER 35 U.S.C. § 271(e)(2)

114.    Oyster Point incorporates by reference the prior paragraphs of this Complaint as if fully set forth herein.

115.    On information and belief, Lupin's ANDA Product, and the use of Lupin's ANDA Product, are covered by one or more claims of the '944 patent.

116.    On information and belief, Lupin submitted or caused submission of Lupin's ANDA to obtain FDA approval of Lupin's ANDA Product prior to the expiration of the '944 patent.

117.    Lupin's submission of Lupin's ANDA containing a Paragraph IV Certification to obtain approval from the FDA to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Lupin's ANDA Product prior to the expiration of the '944 patent is an act of infringement of at least one of the claims of the '944 patent under 35 U.S.C. § 271(e)(2)(A).

118.    The commercial manufacture, importation, use, sale, or offer for sale of Lupin's ANDA Product is in violation of Oyster Point's patent rights and will cause harm to Oyster Point for which damages are inadequate.

119.    As evidenced by Lupin's Notice Letter, which recites that Lupin's ANDA "contains a Paragraph IV certification to obtain approval to engage in the commercial manufacture, use, or sale of the ANDA Product before the expiration of the Orange Book patents," which includes the '944 patent, Lupin knew of the '944 patent before filing Lupin's ANDA.

120.    On information and belief, Lupin's infringement of the '944 patent was, is, and would be willful. Lupin's conduct renders this case "exceptional" under 35 U.S.C. § 285.

121.    Unless and until Lupin is enjoined from directly infringing the '944 patent, actively inducing infringement of the '944 patent, and contributing to the infringement of the '944 patent, Oyster Point will suffer irreparable injury. Oyster Point has no adequate remedy at law and, considering the balance of hardships between Oyster Point and Lupin, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of an injunction.

## COUNT VI: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '944 PATENT UNDER 35 U.S.C. § 271(b)-(c)

122.    Oyster Point incorporates by reference the prior paragraphs of this Complaint as if fully set forth herein.

123.    This claim arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

124.    There is an actual case or controversy such that the Court may entertain Oyster Point's request for declaratory relief consistent with Article III of the United States Constitution, and that actual case or controversy requires a declaration of rights by this Court.

125.    The use of Lupin's ANDA Product, including according to Lupin's Proposed Label, is covered by one or more claims of the '944 patent.

126.    As evidenced at least by Lupin's Notice Letter, which confirms that Lupin's ANDA contains Paragraph IV certifications to the Orange Book patents, which includes the '944 patent, Lupin had actual knowledge, before filing Lupin's ANDA, of both the '944 patent and that Lupin's Proposed Label instructs infringement of the '944 patent.

127.    On information and belief, Lupin submitted or caused submission of Lupin's ANDA to obtain FDA approval of Lupin's ANDA Product and intends to manufacture, use, offer for sale, sell, and/or import Lupin's ANDA Product in the United States.

128.    On information and belief, upon FDA approval of Lupin's ANDA, Lupin will immediately or imminently market or cause to be marketed Lupin's ANDA Product with Lupin's Proposed Label in the United States, including the offer for sale, sale, marketing, distribution, and/or importation of Lupin's ANDA Product, and therefore actively induce and/or contribute to infringement by others of one or more claims of the '944 patent, either literally or under the doctrine of equivalents, under 35 U.S.C. § 271(b) and/or (c), unless enjoined by the Court.

129.    On information and belief, notwithstanding Lupin's knowledge of the claims of the '944 patent, Lupin has continued to assert its intent to manufacture, use, offer for sale, sell, distribute, and/or import Lupin's ANDA Product with its product labeling in or into the United States following FDA approval of Lupin's ANDA prior to the expiration of the '944 patent.

130.    On information and belief, Lupin has made, and will continue to make, substantial preparation in the United States to manufacture, use, sell, offer to sell, and/or import Lupin's ANDA Product upon approval by the FDA.

131.    On information and belief, upon FDA approval of Lupin's ANDA, Lupin will, through its own actions or through the actions of its agents, affiliates, and subsidiaries, market and/or distribute Lupin's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, patients, and/or other end users.

132.     On information and belief, Lupin will knowingly and intentionally include with Lupin's ANDA Product Lupin's Proposed Label, which will include directions and instructions that instruct patients, physicians, and/or healthcare providers to use or administer Lupin's ANDA Product in accordance with the methods claimed in the '944 patent.

133.     On information and belief, physicians, patients, and/or healthcare providers will administer Lupin's ANDA Product in the United States according to the directions and instructions in Lupin's Proposed Label, and such administration will constitute direct infringement of at least one claim of the '944 patent.

134.     On information and belief, at least through Lupin's Proposed Label, Lupin will encourage physicians, healthcare professionals, resellers, pharmacies, hospitals, clinics, patients, and/or other end users of Lupin's ANDA Product to directly infringe the '944 patent, and Lupin will know or should know that such conduct will occur.

135.     On information and belief, Lupin will actively induce, encourage, aid, and abet that conduct by physicians, healthcare professionals, resellers, pharmacies, hospitals, clinics, patients, and/or other end users with knowledge and specific intent that the conduct infringes the '944 patent.

136.     Through at least the foregoing actions, Lupin will actively induce the infringement of at least one claim of the '944 patent.

137.     On information and belief, Lupin plans and intends to, and will, actively induce infringement of the '944 patent when Lupin's ANDA is approved, and plans and intends to, and will, do so immediately and imminently upon FDA approval. Lupin's activities will be done with knowledge of the '944 patent and specific intent to infringe that patent.

138.     On information and belief, Lupin knows or should know that Lupin's ANDA Product and Lupin's Proposed Label will be especially made or adapted for use in infringing the '944 patent, that Lupin's ANDA Product and Lupin's Proposed Label is not a staple article or commodity of

commerce, and that Lupin's ANDA Product and Lupin's Proposed Label are not suitable for substantial non-infringing use.

139.    The commercial manufacture, use, sale, offer for sale, or importation of Lupin's ANDA Product and Lupin's Proposed Label in or into the United States will contribute to the infringement of one or more claims of the '944 patent.

140.    On information and belief, Lupin knows or should know that its offer for sale, sale, and/or importation of Lupin's ANDA Product and Lupin's Proposed Label will contribute to direct infringement of the '944 patent, and that use of Lupin's ANDA Product according to Lupin's Proposed Label by others constitutes direct infringement of the '944 patent.

141.    Oyster Point is entitled to a declaratory judgment that future manufacture, use, offer for sale, sale, and/or importation of Lupin's ANDA Product and Lupin's Proposed Label by Lupin prior to the expiration of the '944 patent will induce and/or contribute to direct infringement of the '944 patent.

142.    The commercial manufacture, importation, use, sale, or offer for sale of Lupin's ANDA Product and Lupin's Proposed Label is in violation of Oyster Point's patent rights and will cause harm to Oyster Point for which damages are inadequate.

143.    On information and belief, Lupin's infringement of the '944 patent was, is, and would be willful. Lupin's conduct renders this case "exceptional" under 35 U.S.C. § 285.

144.    Unless and until Lupin is enjoined from actively inducing infringement of the '944 patent and contributing to the infringement of the '944 patent, Oyster Point will suffer irreparable injury. Oyster Point has no adequate remedy at law and, considering the balance of hardships between Oyster Point and Lupin, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of an injunction.

**COUNT VII: INFRINGEMENT OF THE '284 PATENT UNDER 35 U.S.C. § 271(e)(2)**

145.    Oyster Point incorporates by reference the prior paragraphs of this Complaint as if fully set forth herein.

146.    On information and belief, Lupin's ANDA Product, and the use of Lupin's ANDA Product, are covered by one or more claims of the '284 patent.

147.    On information and belief, Lupin submitted or caused submission of Lupin's ANDA to obtain FDA approval of Lupin's ANDA Product prior to the expiration of the '284 patent.

148.    Lupin's submission of Lupin's ANDA containing a Paragraph IV Certification to obtain approval from the FDA to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Lupin's ANDA Product prior to the expiration of the '284 patent is an act of infringement of at least one of the claims of the '284 patent under 35 U.S.C. § 271(e)(2)(A).

149.    The commercial manufacture, importation, use, sale, or offer for sale of Lupin's ANDA Product is in violation of Oyster Point's patent rights and will cause harm to Oyster Point for which damages are inadequate.

150.    As evidenced by Lupin's Notice Letter, which recites that Lupin's ANDA "contains a Paragraph IV certification to obtain approval to engage in the commercial manufacture, use, or sale of the ANDA Product before the expiration of the Orange Book patents," which includes the '284 patent, Lupin knew of the '284 patent before filing Lupin's ANDA.

151.    On information and belief, Lupin's infringement of the '284 patent was, is, and would be willful. Lupin's conduct renders this case "exceptional" under 35 U.S.C. § 285.

152.    Unless and until Lupin is enjoined from directly infringing the '284 patent, actively inducing infringement of the '284 patent, and contributing to the infringement of the '284 patent, Oyster Point will suffer irreparable injury. Oyster Point has no adequate remedy at law and considering

25

the balance of hardships between Oyster Point and Lupin, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of an injunction.

## COUNT VIII: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '284 PATENT UNDER 35 U.S.C. § 271(b)-(c)

153.    Oyster Point incorporates by reference the prior paragraphs of this Complaint as if fully set forth herein.

154.    This claim arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

155.    There is an actual case or controversy such that the Court may entertain Oyster Point's request for declaratory relief consistent with Article III of the United States Constitution, and that actual case or controversy requires a declaration of rights by this Court.

156.    The use of Lupin's ANDA Product, including according to Lupin's Proposed Label, is covered by one or more claims of the '284 patent.

157.    As evidenced at least by Lupin's Notice Letter, which confirms that Lupin's ANDA contains Paragraph IV certifications to the Orange Book patents, which includes the '284 patent, Lupin had actual knowledge, before filing Lupin's ANDA, of both the '284 patent and that Lupin's Proposed Label instructs infringement of the '284 patent.

158.    On information and belief, Lupin submitted or caused submission of Lupin's ANDA to obtain FDA approval of Lupin's ANDA Product and intends to manufacture, use, offer for sale, sell, and/or import Lupin's ANDA Product in the United States.

159.    On information and belief, upon FDA approval of Lupin's ANDA, Lupin will immediately or imminently market or cause to be marketed Lupin's ANDA Product with Lupin's Proposed Label in the United States, including the offer for sale, sale, marketing, distribution, and/or importation of Lupin's ANDA Product, and therefore actively induce and/or contribute to infringement by others of one or more claims of the '284 patent, either literally or under the doctrine of equivalents, under 35 U.S.C. § 271(b) and/or (c), unless enjoined by the Court.

160.    On information and belief, notwithstanding Lupin's knowledge of the claims of the '284 patent, Lupin has continued to assert its intent to manufacture, use, offer for sale, sell, distribute, and/or import Lupin's ANDA Product with its product labeling in or into the United States following FDA approval of Lupin's ANDA prior to the expiration of the '284 patent.

161.    On information and belief, Lupin has made, and will continue to make, substantial preparation in the United States to manufacture, use, sell, offer to sell, and/or import Lupin's ANDA Product upon approval by the FDA.

162.    On information and belief, upon FDA approval of Lupin's ANDA, Lupin will, through its own actions or through the actions of its agents, affiliates, and subsidiaries, market and/or distribute Lupin's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, patients, and/or other end users.

163.    On information and belief, Lupin will knowingly and intentionally include with Lupin's ANDA Product Lupin's Proposed Label, which will include directions and instructions that instruct patients, physicians, and/or healthcare providers to use or administer Lupin's ANDA Product in accordance with the methods claimed in the '284 patent.

164.    On information and belief, physicians, patients, and/or healthcare providers will administer Lupin's ANDA Product in the United States according to the directions and instructions in Lupin's Proposed Label, and such administration will constitute direct infringement of at least one claim of the '284 patent.

165.    On information and belief, at least through Lupin's Proposed Label, Lupin will encourage physicians, healthcare professionals, resellers, pharmacies, hospitals, clinics, patients, and/or other end users of Lupin's ANDA Product to directly infringe the '284 patent, and Lupin will know or should know that such conduct will occur.

166.    On information and belief, Lupin will actively induce, encourage, aid, and abet that conduct by physicians, healthcare professionals, resellers, pharmacies, hospitals, clinics, patients, and/or other end users with knowledge and specific intent that the conduct infringes the '284 patent.

167.    Through at least the foregoing actions, Lupin will actively induce the infringement of at least one claim of the '284 patent.

168.    On information and belief, Lupin plans and intends to, and will, actively induce infringement of the '284 patent when Lupin's ANDA is approved, and plans and intends to, and will, do so immediately and imminently upon FDA approval. Lupin's activities will be done with knowledge of the '284 patent and specific intent to infringe that patent.

169.    On information and belief, Lupin knows or should know that Lupin's ANDA Product and Lupin's Proposed Label will be especially made or adapted for use in infringing the '284 patent, that Lupin's ANDA Product and Lupin's Proposed Label is not a staple article or commodity of commerce, and that Lupin's ANDA Product and Lupin's Proposed Label are not suitable for substantial non-infringing use.

170.    The commercial manufacture, use, sale, offer for sale, or importation of Lupin's ANDA Product and Lupin's Proposed Label in or into the United States will contribute to the infringement of one or more claims of the '284 patent.

171.    On information and belief, Lupin knows or should know that its offer for sale, sale, and/or importation of Lupin's ANDA Product and Lupin's Proposed Label will contribute to direct infringement of the '284 patent, and that use of Lupin's ANDA Product according to Lupin's Proposed Label by others constitutes direct infringement of the '284 patent.

172.    Oyster Point is entitled to a declaratory judgment that future manufacture, use, offer for sale, sale, and/or importation of Lupin's ANDA Product and Lupin's Proposed Label by Lupin

prior to the expiration of the '284 patent will induce and/or contribute to direct infringement of the '284 patent.

173.    The commercial manufacture, importation, use, sale, or offer for sale of Lupin's ANDA Product and Lupin's Proposed Label is in violation of Oyster Point's patent rights and will cause harm to Oyster Point for which damages are inadequate.

174.    On information and belief, Lupin's infringement of the '284 patent was, is, and would be willful. Lupin's conduct renders this case "exceptional" under 35 U.S.C. § 285.

175.    Unless and until Lupin is enjoined from actively inducing infringement of the '284 patent and contributing to the infringement of the '284 patent, Oyster Point will suffer irreparable injury. Oyster Point has no adequate remedy at law and, considering the balance of hardships between Oyster Point and Lupin, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of an injunction.

## COUNT IX: INFRINGEMENT OF THE '396 PATENT UNDER 35 U.S.C. § 271(e)(2)

176.    Oyster Point incorporates by reference the prior paragraphs of this Complaint as if fully set forth herein.

177.    On information and belief, Lupin's ANDA Product, and the use of Lupin's ANDA Product, are covered by one or more claims of the '396 patent.

178.    On information and belief, Lupin submitted or caused submission of Lupin's ANDA to obtain FDA approval of Lupin's ANDA Product prior to the expiration of the '396 patent.

179.    Lupin's submission of Lupin's ANDA containing a Paragraph IV Certification to obtain approval from the FDA to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Lupin's ANDA Product prior to the expiration of the '396 patent is an act of infringement of at least one of the claims of the '396 patent under 35 U.S.C. § 271(e)(2)(A).

180. The commercial manufacture, importation, use, sale, or offer for sale of Lupin's ANDA Product is in violation of Oyster Point's patent rights and will cause harm to Oyster Point for which damages are inadequate.

181. As evidenced by Lupin's Notice Letter, which recites that Lupin's ANDA "contains a Paragraph IV certification to obtain approval to engage in the commercial manufacture, use, or sale of the ANDA Product before the expiration of the Orange Book patents," which includes the '396 patent, Lupin knew of the '396 patent before filing Lupin's ANDA.

182. On information and belief, Lupin's infringement of the '396 patent was, is, and would be willful. Lupin's conduct renders this case "exceptional" under 35 U.S.C. § 285.

183. Unless and until Lupin is enjoined from directly infringing the '396 patent, actively inducing infringement of the '396 patent, and contributing to the infringement of the '396 patent, Oyster Point will suffer irreparable injury. Oyster Point has no adequate remedy at law and, considering the balance of hardships between Oyster Point and Lupin, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of an injunction.

## COUNT X: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '396 PATENT UNDER 35 U.S.C. § 271(a)-(c)

184. Oyster Point incorporates by reference the prior paragraphs of this Complaint as if fully set forth herein.

185. This claim arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

186. There is an actual case or controversy such that the Court may entertain Oyster Point's request for declaratory relief consistent with Article III of the United States Constitution, and that actual case or controversy requires a declaration of rights by this Court.

187. The use of Lupin's ANDA Product, including according to Lupin's Proposed Label, is covered by one or more claims of the '396 patent.

188.    As evidenced at least by Lupin's Notice Letter, which confirms that Lupin's ANDA contains Paragraph IV certifications to the Orange Book patents, which includes the '396 patent, Lupin had actual knowledge, before filing Lupin's ANDA, of both the '396 patent and that Lupin's Proposed Label instructs infringement of the '396 patent.

189.    On information and belief, Lupin submitted or caused submission of Lupin's ANDA to obtain FDA approval of Lupin's ANDA Product and intends to manufacture, use, offer for sale, sell, and/or import Lupin's ANDA Product in the United States.

190.    On information and belief, upon FDA approval of Lupin's ANDA, Lupin will immediately or imminently market or cause to be marketed Lupin's ANDA Product with Lupin's Proposed Label in the United States, including the offer for sale, sale, marketing, distribution, and/or importation of Lupin's ANDA Product, and therefore actively induce and/or contribute to infringement by others of one or more claims of the '396 patent, either literally or under the doctrine of equivalents, under 35 U.S.C. § 271(a), (b) and/or (c), unless enjoined by the Court.

191.    On information and belief, notwithstanding Lupin's knowledge of the claims of the '396 patent, Lupin has continued to assert its intent to manufacture, use, offer for sale, sell, distribute, and/or import Lupin's ANDA Product with its product labeling in or into the United States following FDA approval of Lupin's ANDA prior to the expiration of the '396 patent.

192.    On information and belief, Lupin has made, and will continue to make, substantial preparation in the United States to manufacture, use, sell, offer to sell, and/or import Lupin's ANDA Product upon approval by the FDA.

193.    On information and belief, upon FDA approval of Lupin's ANDA, Lupin will, through its own actions or through the actions of its agents, affiliates, and subsidiaries, market and/or distribute Lupin's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, patients, and/or other end users.

194.    On information and belief, Lupin will knowingly and intentionally include with Lupin's ANDA Product Lupin's Proposed Label, which will include directions and instructions that instruct patients, physicians, and/or healthcare providers to use or administer Lupin's ANDA Product in accordance with the methods claimed in the '396 patent.

195.    On information and belief, physicians, patients, and/or healthcare providers will administer Lupin's ANDA Product in the United States according to the directions and instructions in Lupin's Proposed Label, and such administration will constitute direct infringement of at least one claim of the '396 patent.

196.    On information and belief, at least through Lupin's Proposed Label, Lupin will encourage physicians, healthcare professionals, resellers, pharmacies, hospitals, clinics, patients, and/or other end users of Lupin's ANDA Product to directly infringe the '396 patent, and Lupin will know or should know that such conduct will occur.

197.    On information and belief, Lupin will actively induce, encourage, aid, and abet that conduct by physicians, healthcare professionals, resellers, pharmacies, hospitals, clinics, patients, and/or other end users with knowledge and specific intent that the conduct infringes the '396 patent.

198.    Through at least the foregoing actions, Lupin will actively induce the infringement of at least one claim of the '396 patent.

199.    On information and belief, Lupin plans and intends to, and will, actively induce infringement of the '396 patent when Lupin's ANDA is approved, and plans and intends to, and will, do so immediately and imminently upon FDA approval. Lupin's activities will be done with knowledge of the '396 patent and specific intent to infringe that patent.

200.    On information and belief, Lupin knows or should know that Lupin's ANDA Product and Lupin's Proposed Label will be especially made or adapted for use in infringing the '396 patent, that Lupin's ANDA Product and Lupin's Proposed Label is not a staple article or commodity of

commerce, and that Lupin's ANDA Product and Lupin's Proposed Label are not suitable for substantial non-infringing use.

201.    The commercial manufacture, use, sale, offer for sale, or importation of Lupin's ANDA Product and Lupin's Proposed Label in or into the United States will contribute to the infringement of one or more claims of the '396 patent.

202.    On information and belief, Lupin knows or should know that its offer for sale, sale, and/or importation of Lupin's ANDA Product and Lupin's Proposed Label will contribute to direct infringement of the '396 patent, and that use of Lupin's ANDA Product according to Lupin's Proposed Label by others constitutes direct infringement of the '396 patent.

203.    Oyster Point is entitled to a declaratory judgment that future manufacture, use, offer for sale, sale, and/or importation of Lupin's ANDA Product and Lupin's Proposed Label by Lupin prior to the expiration of the '396 patent will induce and/or contribute to direct infringement of the '396 patent.

204.    The commercial manufacture, importation, use, sale, or offer for sale of Lupin's ANDA Product and Lupin's Proposed Label is in violation of Oyster Point's patent rights and will cause harm to Oyster Point for which damages are inadequate.

205.    On information and belief, Lupin's infringement of the '396 patent was, is, and would be willful. Lupin's conduct renders this case "exceptional" under 35 U.S.C. § 285.

206.    Unless and until Lupin is enjoined from actively inducing infringement of the '396 patent and contributing to the infringement of the '396 patent, Oyster Point will suffer irreparable injury. Oyster Point has no adequate remedy at law and, considering the balance of hardships between Oyster Point and Lupin, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of an injunction.

**COUNT XI: INFRINGEMENT OF THE '598 PATENT UNDER 35 U.S.C. § 271(e)(2)**

207.    Oyster Point incorporates by reference the prior paragraphs of this Complaint as if fully set forth herein.

208.    On information and belief, Lupin's ANDA Product, and the use of Lupin's ANDA Product, are covered by one or more claims of the '598 patent.

209.    On information and belief, Lupin submitted or caused submission of Lupin's ANDA to obtain FDA approval of Lupin's ANDA Product prior to the expiration of the '598 patent.

210.    Lupin's submission of Lupin's ANDA containing a Paragraph IV Certification to obtain approval from the FDA to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Lupin's ANDA Product prior to the expiration of the '598 patent is an act of infringement of at least one of the claims of the '598 patent under 35 U.S.C. § 271(e)(2)(A).

211.    The commercial manufacture, importation, use, sale, or offer for sale of Lupin's ANDA Product is in violation of Oyster Point's patent rights and will cause harm to Oyster Point for which damages are inadequate.

212.    As evidenced by Lupin's Notice Letter, which recites that Lupin's ANDA "contains a Paragraph IV certification to obtain approval to engage in the commercial manufacture, use, or sale of the ANDA Product before the expiration of the Orange Book patents," which includes the '598 patent, Lupin knew of the '598 patent before filing Lupin's ANDA.

213.    On information and belief, Lupin's infringement of the '598 patent was, is, and would be willful. Lupin's conduct renders this case "exceptional" under 35 U.S.C. § 285.

214.    Unless and until Lupin is enjoined from directly infringing the '598 patent, actively inducing infringement of the '598 patent, and contributing to the infringement of the '598 patent, Oyster Point will suffer irreparable injury. Oyster Point has no adequate remedy at law and,

considering the balance of hardships between Oyster Point and Lupin, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of an injunction.

## COUNT XII: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '598 PATENT UNDER 35 U.S.C. § 271(b)-(c)

215.    Oyster Point incorporates by reference the prior paragraphs of this Complaint as if fully set forth herein.

216.    This claim arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

217.    There is an actual case or controversy such that the Court may entertain Oyster Point's request for declaratory relief consistent with Article III of the United States Constitution, and that actual case or controversy requires a declaration of rights by this Court.

218.    The use of Lupin's ANDA Product, including according to Lupin's Proposed Label, is covered by one or more claims of the '598 patent.

219.    As evidenced at least by Lupin's Notice Letter, which confirms that Lupin's ANDA contains Paragraph IV certifications to the Orange Book patents, which includes the '598 patent, Lupin had actual knowledge, before filing Lupin's ANDA, of both the '598 patent and that Lupin's Proposed Label instructs infringement of the '598 patent.

220.    On information and belief, Lupin submitted or caused submission of Lupin's ANDA to obtain FDA approval of Lupin's ANDA Product and intends to manufacture, use, offer for sale, sell, and/or import Lupin's ANDA Product in the United States.

221.    On information and belief, upon FDA approval of Lupin's ANDA, Lupin will immediately or imminently market or cause to be marketed Lupin's ANDA Product with Lupin's Proposed Label in the United States, including the offer for sale, sale, marketing, distribution, and/or importation of Lupin's ANDA Product, and therefore actively induce and/or contribute to infringement by others of one or more claims of the '598 patent, either literally or under the doctrine of equivalents, under 35 U.S.C. § 271(b) and/or (c), unless enjoined by the Court.

222.    On information and belief, notwithstanding Lupin's knowledge of the claims of the '598 patent, Lupin has continued to assert its intent to manufacture, use, offer for sale, sell, distribute, and/or import Lupin's ANDA Product with its product labeling in or into the United States following FDA approval of Lupin's ANDA prior to the expiration of the '598 patent.

223.    On information and belief, Lupin has made, and will continue to make, substantial preparations in the United States to manufacture, use, sell, offer to sell, and/or import Lupin's ANDA Product upon approval by the FDA.

224.    On information and belief, upon FDA approval of Lupin's ANDA, Lupin will, through its own actions or through the actions of its agents, affiliates, and subsidiaries, market and/or distribute Lupin's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, patients, and/or other end users.

225.    On information and belief, Lupin will knowingly and intentionally include with Lupin's ANDA Product Lupin's Proposed Label, which will include directions and instructions that instruct patients, physicians, and/or healthcare providers to use or administer Lupin's ANDA Product in accordance with the methods claimed in the '598 patent.

226.    On information and belief, physicians, patients, and/or healthcare providers will administer Lupin's ANDA Product in the United States according to the directions and instructions in Lupin's Proposed Label, and such administration will constitute direct infringement of at least one claim of the '598 patent.

227.    On information and belief, at least through Lupin's Proposed Label, Lupin will encourage physicians, healthcare professionals, resellers, pharmacies, hospitals, clinics, patients, and/or other end users of Lupin's ANDA Product to directly infringe the '598 patent, and Lupin will know or should know that such conduct will occur.

228.     On information and belief, Lupin will actively induce, encourage, aid, and abet that conduct by physicians, healthcare professionals, resellers, pharmacies, hospitals, clinics, patients, and/or other end users with knowledge and specific intent that the conduct infringes the '598 patent.

229.     Through at least the foregoing actions, Lupin will actively induce the infringement of at least one claim of the '598 patent.

230.     On information and belief, Lupin plans and intends to, and will, actively induce infringement of the '598 patent when Lupin's ANDA is approved, and plans and intends to, and will, do so immediately and imminently upon FDA approval. Lupin's activities will be done with knowledge of the '598 patent and specific intent to infringe that patent.

231.     On information and belief, Lupin knows or should know that Lupin's ANDA Product and Lupin's Proposed Label will be especially made or adapted for use in infringing the '598 patent, that Lupin's ANDA Product and Lupin's Proposed Label is not a staple article or commodity of commerce, and that Lupin's ANDA Product and Lupin's Proposed Label are not suitable for substantial non-infringing use.

232.     The commercial manufacture, use, sale, offer for sale, or importation of Lupin's ANDA Product and Lupin's Proposed Label in or into the United States will contribute to the infringement of one or more claims of the '598 patent.

233.     On information and belief, Lupin knows or should know that its offer for sale, sale, and/or importation of Lupin's ANDA Product and Lupin's Proposed Label will contribute to direct infringement of the '598 patent, and that use of Lupin's ANDA Product according to Lupin's Proposed Label by others constitutes direct infringement of the '598 patent.

234.     Oyster Point is entitled to a declaratory judgment that future manufacture, use, offer for sale, sale, and/or importation of Lupin's ANDA Product and Lupin's Proposed Label by Lupin

prior to the expiration of the '598 patent will induce and/or contribute to direct infringement of the '598 patent.

235.    The commercial manufacture, importation, use, sale, or offer for sale of Lupin's ANDA Product and Lupin's Proposed Label is in violation of Oyster Point's patent rights and will cause harm to Oyster Point for which damages are inadequate.

236.    On information and belief, Lupin's infringement of the '598 patent was, is, and would be willful. Lupin's conduct renders this case "exceptional" under 35 U.S.C. § 285.

237.    Unless and until Lupin is enjoined from actively inducing infringement of the '598 patent and contributing to the infringement of the '598 patent, Oyster Point will suffer irreparable injury. Oyster Point has no adequate remedy at law and, considering the balance of hardships between Oyster Point and Lupin, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of an injunction.

## COUNT XIII: INFRINGEMENT OF THE '941 PATENT UNDER 35 U.S.C. § 271(e)(2)

238.    Oyster Point incorporates by reference the prior paragraphs of this Complaint as if fully set forth herein.

239.    On information and belief, Lupin's ANDA Product, and the use of Lupin's ANDA Product, are covered by one or more claims of the '941 patent.

240.    On information and belief, Lupin submitted or caused submission of Lupin's ANDA to obtain FDA approval of Lupin's ANDA Product prior to the expiration of the '941 patent.

241.    Lupin's submission of Lupin's ANDA to obtain approval from the FDA to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Lupin's ANDA Product prior to the expiration of the '941 patent is an act of infringement of at least one of the claims of the '941 patent under 35 U.S.C. § 271(e)(2)(A).

242.    The commercial manufacture, importation, use, sale, or offer for sale of Lupin's ANDA Product is in violation of Oyster Point's patent rights and will cause harm to Oyster Point for which damages are inadequate.

243.    On information and belief, Lupin is aware of the '941 patent and intends to engage in commercial manufacture, use, or sale of the ANDA product before the '941 patent's expiration.

244.    On information and belief, Lupin's infringement of the '941 patent was, is, and would be willful. Lupin's conduct renders this case "exceptional" under 35 U.S.C. § 285.

245.    Unless and until Lupin is enjoined from directly infringing the '941 patent, actively inducing infringement of the '941 patent, and contributing to the infringement of the '941 patent, Oyster Point will suffer irreparable injury. Oyster Point has no adequate remedy at law and, considering the balance of hardships between Oyster Point and Lupin, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of an injunction.

### COUNT XIV: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '941 PATENT UNDER 35 U.S.C. § 271(b)-(c)

246.    Oyster Point incorporates by reference the prior paragraphs of this Complaint as if fully set forth herein.

247.    This claim arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

248.    There is an actual case or controversy such that the Court may entertain Oyster Point's request for declaratory relief consistent with Article III of the United States Constitution, and that actual case or controversy requires a declaration of rights by this Court.

249.    The use of Lupin's ANDA Product, including according to Lupin's Proposed Label, is covered by one or more claims of the '941 patent.

250.    Lupin has actual knowledge of both the '941 patent and that Lupin's Proposed Label instructs infringement of the '941 patent.

251.    On information and belief, Lupin submitted or caused submission of Lupin's ANDA to obtain FDA approval of Lupin's ANDA Product and intends to manufacture, use, offer for sale, sell, and/or import Lupin's ANDA Product in the United States.

252.    On information and belief, upon FDA approval of Lupin's ANDA, Lupin will immediately or imminently market or cause to be marketed Lupin's ANDA Product with Lupin's Proposed Label in the United States, including the offer for sale, sale, marketing, distribution, and/or importation of Lupin's ANDA Product, and therefore actively induce and/or contribute to infringement by others of one or more claims of the '941 patent, either literally or under the doctrine of equivalents, under 35 U.S.C. § 271(b) and/or (c), unless enjoined by the Court.

253.    On information and belief, notwithstanding Lupin's knowledge of the claims of the '941 patent, Lupin has continued to assert its intent to manufacture, use, offer for sale, sell, distribute, and/or import Lupin's ANDA Product with its product labeling in or into the United States following FDA approval of Lupin's ANDA prior to the expiration of the '941 patent.

254.    On information and belief, Lupin has made, and will continue to make, substantial preparations in the United States to manufacture, use, sell, offer to sell, and/or import Lupin's ANDA Product upon approval by the FDA.

255.    On information and belief, upon FDA approval of Lupin's ANDA, Lupin will, through its own actions or through the actions of its agents, affiliates, and subsidiaries, market and/or distribute Lupin's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, patients, and/or other end users.

256.    On information and belief, Lupin will knowingly and intentionally include with Lupin's ANDA Product Lupin's Proposed Label, which will include directions and instructions that instruct patients, physicians, and/or healthcare providers to use or administer Lupin's ANDA Product in accordance with the methods claimed in the '941 patent.

257.    On information and belief, physicians, patients, and/or healthcare providers will administer Lupin's ANDA Product in the United States according to the directions and instructions in Lupin's Proposed Label, and such administration will constitute direct infringement of at least one claim of the '941 patent.

258.    On information and belief, at least through Lupin's Proposed Label, Lupin will encourage physicians, healthcare professionals, resellers, pharmacies, hospitals, clinics, patients, and/or other end users of Lupin's ANDA Product to directly infringe the '941 patent, and Lupin will know or should know that such conduct will occur.

259.    On information and belief, Lupin will actively induce, encourage, aid, and abet that conduct by physicians, healthcare professionals, resellers, pharmacies, hospitals, clinics, patients, and/or other end users with knowledge and specific intent that the conduct infringes the '941 patent.

260.    Through at least the foregoing actions, Lupin will actively induce the infringement of at least one claim of the '941 patent.

261.    On information and belief, Lupin plans and intends to, and will, actively induce infringement of the '941 patent when Lupin's ANDA is approved, and plans and intends to, and will, do so immediately and imminently upon FDA approval. Lupin's activities will be done with knowledge of the '941 patent and specific intent to infringe that patent.

262.    On information and belief, Lupin knows or should know that Lupin's ANDA Product and Lupin's Proposed Label will be especially made or adapted for use in infringing the '941 patent, that Lupin's ANDA Product and Lupin's Proposed Label is not a staple article or commodity of commerce, and that Lupin's ANDA Product and Lupin's Proposed Label are not suitable for substantial non-infringing use.

263.     The commercial manufacture, use, sale, offer for sale, or importation of Lupin's ANDA Product and Lupin's Proposed Label in or into the United States will contribute to the infringement of one or more claims of the '941 patent.

264.     On information and belief, Lupin knows or should know that its offer for sale, sale, and/or importation of Lupin's ANDA Product and Lupin's Proposed Label will contribute to direct infringement of the '941 patent, and that use of Lupin's ANDA Product according to Lupin's Proposed Label by others constitutes direct infringement of the '941 patent.

265.     Oyster Point is entitled to a declaratory judgment that future manufacture, use, offer for sale, sale, and/or importation of Lupin's ANDA Product and Lupin's Proposed Label by Lupin prior to the expiration of the '941 patent will induce and/or contribute to direct infringement of the '941 patent.

266.     The commercial manufacture, importation, use, sale, or offer for sale of Lupin's ANDA Product and Lupin's Proposed Label is in violation of Oyster Point's patent rights and will cause harm to Oyster Point for which damages are inadequate.

267.     On information and belief, Lupin's infringement of the '941 patent was, is, and would be willful. Lupin's conduct renders this case "exceptional" under 35 U.S.C. § 285.

268.     Unless and until Lupin is enjoined from actively inducing infringement of the '941 patent and contributing to the infringement of the '941 patent, Oyster Point will suffer irreparable injury. Oyster Point has no adequate remedy at law and, considering the balance of hardships between Oyster Point and Lupin, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of an injunction.

### COUNT XV: INFRINGEMENT OF THE '943 PATENT UNDER 35 U.S.C. § 271(e)(2)

269.     Oyster Point incorporates by reference the prior paragraphs of this Complaint as if fully set forth herein.

270.    On information and belief, Lupin's ANDA Product, and the use of Lupin's ANDA Product, are covered by one or more claims of the '943 patent.

271.    On information and belief, Lupin submitted or caused submission of Lupin's ANDA to obtain FDA approval of Lupin's ANDA Product prior to the expiration of the '943 patent.

272.    Lupin's submission of Lupin's ANDA to obtain approval from the FDA to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Lupin's ANDA Product prior to the expiration of the '943 patent is an act of infringement of at least one of the claims of the '943 patent under 35 U.S.C. § 271(e)(2)(A).

273.    The commercial manufacture, importation, use, sale, or offer for sale of Lupin's ANDA Product is in violation of Oyster Point's patent rights and will cause harm to Oyster Point for which damages are inadequate.

274.    On information and belief, Lupin is aware of the '943 patent and intends to engage in commercial manufacture, use, or sale of the ANDA product before the '943 patent's expiration.

275.    On information and belief, Lupin's infringement of the '943 patent was, is, and would be willful. Lupin's conduct renders this case "exceptional" under 35 U.S.C. § 285.

276.    Unless and until Lupin is enjoined from directly infringing the '943 patent, actively inducing infringement of the '943 patent, and contributing to the infringement of the '943 patent, Oyster Point will suffer irreparable injury. Oyster Point has no adequate remedy at law and, considering the balance of hardships between Oyster Point and Lupin, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of an injunction.

## COUNT XVI: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '943 PATENT UNDER 35 U.S.C. § 271(b)-(c)

277.    Oyster Point incorporates by reference the prior paragraphs of this Complaint as if fully set forth herein.

278.    This claim arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

279.    There is an actual case or controversy such that the Court may entertain Oyster Point's request for declaratory relief consistent with Article III of the United States Constitution, and that actual case or controversy requires a declaration of rights by this Court.

280.    The use of Lupin's ANDA Product, including according to Lupin's Proposed Label, is covered by one or more claims of the '943 patent.

281.    Lupin has actual knowledge of the '943 patent and that Lupin's Proposed Label instructs infringement of the '943 patent.

282.    On information and belief, Lupin submitted or caused submission of Lupin's ANDA to obtain FDA approval of Lupin's ANDA Product and intends to manufacture, use, offer for sale, sell, and/or import Lupin's ANDA Product in the United States.

283.    On information and belief, upon FDA approval of Lupin's ANDA, Lupin will immediately or imminently market or cause to be marketed Lupin's ANDA Product with Lupin's Proposed Label in the United States, including the offer for sale, sale, marketing, distribution, and/or importation of Lupin's ANDA Product, and therefore actively induce and/or contribute to infringement by others of one or more claims of the '943 patent, either literally or under the doctrine of equivalents, under 35 U.S.C. § 271(b) and/or (c), unless enjoined by the Court.

284.    On information and belief, notwithstanding Lupin's knowledge of the claims of the '943 patent, Lupin has continued to assert its intent to manufacture, use, offer for sale, sell, distribute, and/or import Lupin's ANDA Product with its product labeling in or into the United States following FDA approval of Lupin's ANDA prior to the expiration of the '943 patent.

285.    On information and belief, Lupin has made, and will continue to make, substantial preparation in the United States to manufacture, use, sell, offer to sell, and/or import Lupin's ANDA Product upon approval by the FDA.

286.    On information and belief, upon FDA approval of Lupin's ANDA, Lupin will, through its own actions or through the actions of its agents, affiliates, and subsidiaries, market and/or distribute Lupin's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, patients, and/or other end users.

287.    On information and belief, Lupin will knowingly and intentionally include with Lupin's ANDA Product Lupin's Proposed Label, which will include directions and instructions that instruct patients, physicians, and/or healthcare providers to use or administer Lupin's ANDA Product in accordance with the methods claimed in the '943 patent.

288.    On information and belief, physicians, patients, and/or healthcare providers will administer Lupin's ANDA Product in the United States according to the directions and instructions in Lupin's Proposed Label, and such administration will constitute direct infringement of at least one claim of the '943 patent.

289.    On information and belief, at least through Lupin's Proposed Label, Lupin will encourage physicians, healthcare professionals, resellers, pharmacies, hospitals, clinics, patients, and/or other end users of Lupin's ANDA Product to directly infringe the '943 patent, and Lupin will know or should know that such conduct will occur.

290.    On information and belief, Lupin will actively induce, encourage, aid, and abet that conduct by physicians, healthcare professionals, resellers, pharmacies, hospitals, clinics, patients, and/or other end users with knowledge and specific intent that the conduct infringes the '943 patent.

291.    Through at least the foregoing actions, Lupin will actively induce the infringement of at least one claim of the '943 patent.

292.    On information and belief, Lupin plans and intends to, and will, actively induce infringement of the '943 patent when Lupin's ANDA is approved, and plans and intends to, and will,

do so immediately and imminently upon FDA approval. Lupin's activities will be done with knowledge of the '943 patent and specific intent to infringe that patent.

293.    On information and belief, Lupin knows or should know that Lupin's ANDA Product and Lupin's Proposed Label will be especially made or adapted for use in infringing the '943 patent, that Lupin's ANDA Product and Lupin's Proposed Label is not a staple article or commodity of commerce, and that Lupin's ANDA Product and Lupin's Proposed Label are not suitable for substantial non-infringing use.

294.    The commercial manufacture, use, sale, offer for sale, or importation of Lupin's ANDA Product and Lupin's Proposed Label in or into the United States will contribute to the infringement of one or more claims of the '943 patent.

295.    On information and belief, Lupin knows or should know that its offer for sale, sale, and/or importation of Lupin's ANDA Product and Lupin's Proposed Label will contribute to direct infringement of the '943 patent, and that use of Lupin's ANDA Product according to Lupin's Proposed Label by others constitutes direct infringement of the '943 patent.

296.    Oyster Point is entitled to a declaratory judgment that future manufacture, use, offer for sale, sale, and/or importation of Lupin's ANDA Product and Lupin's Proposed Label by Lupin prior to the expiration of the '943 patent will induce and/or contribute to direct infringement of the '943 patent.

297.    The commercial manufacture, importation, use, sale, or offer for sale of Lupin's ANDA Product and Lupin's Proposed Label is in violation of Oyster Point's patent rights and will cause harm to Oyster Point for which damages are inadequate.

298.    On information and belief, Lupin's infringement of the '943 patent was, is, and would be willful. Lupin's conduct renders this case "exceptional" under 35 U.S.C. § 285.

299.    Unless and until Lupin is enjoined from actively inducing infringement of the '943 patent and contributing to the infringement of the '943 patent, Oyster Point will suffer irreparable injury. Oyster Point has no adequate remedy at law and, considering the balance of hardships between Oyster Point and Lupin, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of an injunction.

### COUNT XVII: INFRINGEMENT OF THE '380 PATENT UNDER 35 U.S.C. 271(e)(2)

300.    Oyster Point incorporates by reference the prior paragraphs of this Complaint as if fully set forth herein.

301.    On information and belief, Lupin's ANDA Product, and the use of Lupin's ANDA Product, are covered by one or more claims of the '380 patent.

302.    On information and belief, Lupin submitted or caused submission of Lupin's ANDA to obtain FDA approval of Lupin's ANDA Product prior to the expiration of the '380 patent.

303.    Lupin's submission of Lupin's ANDA to obtain approval from the FDA to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Lupin's ANDA Product prior to the expiration of the '380 patent is an act of infringement of at least one of the claims of the '380 patent under 35 U.S.C. § 271(e)(2)(A).

304.    The commercial manufacture, importation, use, sale, or offer for sale of Lupin's ANDA Product is in violation of Oyster Point's patent rights and will cause harm to Oyster Point for which damages are inadequate.

305.    On information and belief, Lupin is aware of the '380 patent and intends to engage in commercial manufacture, use, or sale of the ANDA product before the '380 patent's expiration.

306.    On information and belief, Lupin's infringement of the '380 patent was, is, and would be willful. Lupin's conduct renders this case "exceptional" under 35 U.S.C. § 285.

307. Unless and until Lupin is enjoined from directly infringing the '380 patent, actively inducing infringement of the '380 patent, and contributing to the infringement of the '380 patent, Oyster Point will suffer irreparable injury. Oyster Point has no adequate remedy at law and, considering the balance of hardships between Oyster Point and Lupin, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of an injunction.

## COUNT XVIII: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '380 PATENT UNDER 35 U.S.C. § 271(b)-(c)

308. Oyster Point incorporates by reference the prior paragraphs of this Complaint as if fully set forth herein.

309. This claim arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

310. There is an actual case or controversy such that the Court may entertain Oyster Point's request for declaratory relief consistent with Article III of the United States Constitution, and that actual case or controversy requires a declaration of rights by this Court.

311. The use of Lupin's ANDA Product, including according to Lupin's Proposed Label, is covered by one or more claims of the '380 patent.

312. Lupin had actual knowledge of both the '380 patent and that Lupin's Proposed Label instructs infringement of the '380 patent.

313. On information and belief, Lupin submitted or caused submission of Lupin's ANDA to obtain FDA approval of Lupin's ANDA Product and intends to manufacture, use, offer for sale, sell, and/or import Lupin's ANDA Product in the United States.

314. On information and belief, upon FDA approval of Lupin's ANDA, Lupin will immediately or imminently market or cause to be marketed Lupin's ANDA Product with Lupin's Proposed Label in the United States, including the offer for sale, sale, marketing, distribution, and/or importation of Lupin's ANDA Product, and therefore actively induce and/or contribute to

infringement by others of one or more claims of the '380 patent, either literally or under the doctrine of equivalents, under 35 U.S.C. § 271(b) and/or (c), unless enjoined by the Court.

315.    On information and belief, notwithstanding Lupin's knowledge of the claims of the '380 patent, Lupin has continued to assert its intent to manufacture, use, offer for sale, sell, distribute, and/or import Lupin's ANDA Product with its product labeling in or into the United States following FDA approval of Lupin's ANDA prior to the expiration of the '380 patent.

316.    On information and belief, Lupin has made, and will continue to make, substantial preparation in the United States to manufacture, use, sell, offer to sell, and/or import Lupin's ANDA Product upon approval by the FDA.

317.    On information and belief, upon FDA approval of Lupin's ANDA, Lupin will, through its own actions or through the actions of its agents, affiliates, and subsidiaries, market and/or distribute Lupin's ANDA Product to resellers, pharmacies, hospitals, clinics, healthcare professionals, patients, and/or other end users.

318.    On information and belief, Lupin will knowingly and intentionally include with Lupin's ANDA Product Lupin's Proposed Label, which will include directions and instructions that instruct patients, physicians, and/or healthcare providers to use or administer Lupin's ANDA Product in accordance with the methods claimed in the '380 patent.

319.    On information and belief, physicians, patients, and/or healthcare providers will administer Lupin's ANDA Product in the United States according to the directions and instructions in Lupin's Proposed Label, and such administration will constitute direct infringement of at least one claim of the '380 patent.

320.    On information and belief, at least through Lupin's Proposed Label, Lupin will encourage physicians, healthcare professionals, resellers, pharmacies, hospitals, clinics, patients,

and/or other end users of Lupin's ANDA Product to directly infringe the '380 patent, and Lupin will know or should know that such conduct will occur.

321.    On information and belief, Lupin will actively induce, encourage, aid, and abet that conduct by physicians, healthcare professionals, resellers, pharmacies, hospitals, clinics, patients, and/or other end users with knowledge and specific intent that the conduct infringes the '380 patent.

322.    Through at least the foregoing actions, Lupin will actively induce the infringement of at least one claim of the '380 patent.

323.    On information and belief, Lupin plans and intends to, and will, actively induce infringement of the '380 patent when Lupin's ANDA is approved, and plans and intends to, and will, do so immediately and imminently upon FDA approval. Lupin's activities will be done with knowledge of the '380 patent and specific intent to infringe that patent.

324.    On information and belief, Lupin knows or should know that Lupin's ANDA Product and Lupin's Proposed Label will be especially made or adapted for use in infringing the '380 patent, that Lupin's ANDA Product and Lupin's Proposed Label is not a staple article or commodity of commerce, and that Lupin's ANDA Product and Lupin's Proposed Label are not suitable for substantial non-infringing use.

325.    The commercial manufacture, use, sale, offer for sale, or importation of Lupin's ANDA Product and Lupin's Proposed Label in or into the United States will contribute to the infringement of one or more claims of the '380 patent.

326.    On information and belief, Lupin knows or should know that its offer for sale, sale, and/or importation of Lupin's ANDA Product and Lupin's Proposed Label will contribute to direct infringement of the '380 patent, and that use of Lupin's ANDA Product according to Lupin's Proposed Label by others constitutes direct infringement of the '380 patent.

327.    Oyster Point is entitled to a declaratory judgment that future manufacture, use, offer for sale, sale, and/or importation of Lupin's ANDA Product and Lupin's Proposed Label by Lupin prior to the expiration of the '380 patent will induce and/or contribute to direct infringement of the '380 patent.

328.    The commercial manufacture, importation, use, sale, or offer for sale of Lupin's ANDA Product and Lupin's Proposed Label is in violation of Oyster Point's patent rights and will cause harm to Oyster Point for which damages are inadequate.

329.    On information and belief, Lupin's infringement of the '380 patent was, is, and would be willful. Lupin's conduct renders this case "exceptional" under 35 U.S.C. § 285.

330.    Unless and until Lupin is enjoined from actively inducing infringement of the '380 patent and contributing to the infringement of the '380 patent, Oyster Point will suffer irreparable injury. Oyster Point has no adequate remedy at law and, considering the balance of hardships between Oyster Point and Lupin, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of an injunction.

## PRAYER FOR RELIEF

WHEREFORE, Oyster Point prays that this Court grant the following relief:

A.    A judgment that Lupin has infringed the '644 patent, the '645 patent, the '944 patent, the '284 patent, the '396 patent, the '598 patent, the '941 patent, the '943 patent, and/or the '380 patent by submitting Lupin's ANDA under Section 505(j) of the Federal Food, Drug, and Cosmetic Act, and that the making, using, offering to sell, selling within the United States, and/or importation into the United States of Lupin's ANDA Product will constitute infringement of the '644 patent, the '645 patent, the '944 patent, the '284 patent, the '396 patent, the '598 patent, the '941 patent, the '943 patent, and/or the '380 patent;

B.    A judgment entered declaring that the Patents-in-Suit have not been proven invalid or unenforceable;

C.      An order pursuant to 35 U.S.C. § 271(e)(4)(A) providing that the effective date of any FDA approval of Lupin's ANDA shall be a date which is not earlier than the latest expiration date of any of the Patents-in-Suit as extended by any applicable periods of exclusivity to which Oyster Point is or will be entitled;

D.      An order requiring Lupin to inform the FDA that, contrary to any prior notifications to the FDA pursuant to § 314.95(e), it did not provide notice to Oyster Point as NDA holder of Lupin's Paragraph IV Certifications pursuant to 21 C.F.R. § 314.95, and to correct any such notices;

E.      An order under 35 U.S.C. § 271(e)(4)(B) and/or 35 U.S.C. § 283 permanently enjoining Lupin, its affiliates, subsidiaries, and each of their officers, agents, servants, and employees and those acting in privity or concert with them, from making, using, offering to sell, and/or selling in the United States, and/or importing into the United States any of Lupin's ANDA Product until after the latest expiration date of any of the Patents-in-Suit, including any extensions and/or additional periods of exclusivity to which Oyster Point is or will be entitled;

F.      An order pursuant to 28 U.S.C. §§ 2201 and 2202 declaring that Lupin's commercial manufacture, use, offer for sale, sale, and/or importation of Lupin's ANDA Product in or into the United States prior to the expiration of the Patents-in-Suit (including such actions by its officers, agents, servants, employees, licensees, representatives, and attorneys, and all other persons acting or attempting to act in active concert or participation with Lupin or acting on Lupin's behalf) will constitute infringement of the Patents-in-Suit under 35 U.S.C. § 271(a), (b), and/or (c) and providing any further necessary or proper relief based on the Court's declaratory judgment or decree;

G.      Damages or other monetary relief under 35 U.S.C. § 271(a), (b), (c), and (e)(4)(c), and/or 35 U.S.C. § 284, including costs, fees, pre- and post-judgment interest, to Oyster Point if Lupin engages in commercial manufacture, use, offers to sell, sale, and/or importation in or into the United States of any of Lupin's ANDA Product prior to the latest expiration date of any of the Patents-in-

52

Suit, including any extensions and/or additional periods of exclusivity to which Oyster Point is or will be entitled;

H.    An order that this case is exceptional under 35 U.S.C. § 285, and that Oyster Point be awarded reasonable attorneys' fees and costs; and

I.    Such further and other relief as this Court deems proper and just.

Dated: November 21, 2025

Of Counsel:

Shannon M. Bloodworth (to be admitted *pro hac vice*)
**PERKINS COIE LLP**
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Phone: (202) 654-6200
SBloodworth@perkinscoie.com

Autumn N. Nero (to be admitted *pro hac vice*)
**PERKINS COIE LLP**
33 E. Main Street, Suite 201
Madison, WI 53703
Phone: (608) 663-7460
ANero@perkinscoie.com

Bryan D. Beel (to be admitted *pro hac vice*)
**PERKINS COIE LLP**
1120 NW Couch Street
Tenth Floor
Portland, OR 97209
Phone: (503) 727-2000
BBeel@perkinscoie.com

By:
*s/ Gregory D. Miller*
Gregory D. Miller
Timothy P. Gonzalez
Catherine Salerno
**RIVKIN RADLER LLP**
25 Main Street
Court Plaza North, Suite 501
Hackensack, New Jersey 07601
Telephone: 201-297-2460
Facsimile: 201-489-0495
Gregory.miller@rivkin.com
Timothy.Gonzalez@rivkin.com
Catherine.Salerno@rivkin.com

*Attorneys for Plaintiff*
*Oyster Point Pharma, Inc.*

## <u>CERTIFICATION PURSUANT TO LOCAL CIVIL RULES 11.2 & 40.1</u>

Pursuant to Local Civil Rules 11.2 and 40.1, I hereby certify that, to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

Dated: November 21, 2025

*s/ Gregory D. Miller*
Gregory D. Miller

## **CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 201.1**

I hereby certify that the above-captioned matter is not subject to compulsory arbitration in that Plaintiff seeks, *inter alia*, declaratory relief.

Dated: November 21, 2025                                             *s/ Gregory D. Miller*
                                                                                      Gregory D. Miller